**STATE of Missouri, Respondent,**

v.

**John E. NUNN, Appellant.**

**No. 64096.**

Supreme Court of Missouri,
En Banc.

Feb. 23, 1983.

**56**

T. Patrick Deaton, Asst. Public Defender, Clayton, for appellant.

John Ashcroft, Atty. Gen., William K. Haas, Asst. Atty. Gen., Jefferson City, for respondent.

NORWIN D. HOUSER, Senior Judge.

John E. Nunn was charged with rape, assault in the first degree and kidnapping. Acquitted of the rape and kidnapping charges, defendant was convicted by a jury of assault in the first degree, § 565.050, RSMo and sentenced to six years in the custody of the department of corrections. Nunn appealed to the Missouri Court of Appeals, Eastern District, which affirmed the conviction. The case was transferred to this Court pursuant to Rule 83.03.

The victim of the assault, 18-year-old Tracey Swaggert, testified at trial that defendant struck her in the head; beat her head while she was lying on the ground; kicked her and grabbed her by the neck; continued to beat her for ten or fifteen minutes; that after the assault her face, neck and arms were bleeding.

Defendant took the witness stand at the trial and testified that he hit Tracey with the back of his hand, and hit her again; that he was upset and angry, "very angry", and was yelling at her because she was "playing with (his) life"; that he believed his life was "in real danger"; that the fight with Tracey went on for about ten minutes; that after Raymond Griffin broke up the fight defendant again grabbed Tracey. Defendant acknowledged that he had to be "thrown down the hill" by Griffin in order to break it up the second time.

Defendant's witness Patricia Smith, an eyewitness, acknowledged on cross-examination that defendant hit Tracey in the head and body, threw her to the ground, kicked her, pulled her back to her feet and began to choke her.

Defendant testified at trial to the following on the "mitigating issue of extreme emotional disturbance":

Defendant and Tracey Swaggert had been having an affair for several months. Shortly after midnight on the day of the assault Tracey telephoned defendant, told him she wanted to talk to him, and asked him to meet her at a nearby street intersection. Defendant dressed and walked to the appointed place, but Tracey was not present. Defendant waited ten minutes, and when Tracey did not show up he started back to his mother's house where he was staying. He heard a shot and the sound of a bullet passing him. Defendant jumped behind a concrete structure, fearing for his life. Defendant ran back to his mother's house and immediately called Tracey on the telephone. No one answered the phone. That evening defendant encountered Tracey on the street. He confronted Tracey with her failure to appear at the intersection and asked her whether she knew anything about somebody trying to shoot him. Tracey repeatedly stated that she did not know what he was talking about. Suspecting that Tracey had something to do with it defendant became angry and upset and began the assault.

The trial court admitted in evidence defendant's detailed confession, made in the

presence of two detectives. Defendant's incriminating admissions were recorded on a tape after defendant was taken into custody.

■ Appellant's first point is that the trial court erred in overruling his motion to suppress the tape-recorded statement and in allowing the tape to be played before the jury. Appellant contends that the statement was not voluntarily given; that he was not properly advised of and did not understand his constitutional rights during custodial interrogation; that he was led to believe that he would not be able to consult with an attorney until after formal warrants were applied for and issued, and was told by the interrogating officer that he was not waiving his constitutional rights by speaking with her.

This point is without substance. In the first place there was substantial evidence that defendant was effectively advised of all of his *Miranda* rights, including his right to remain silent and to consult with an attorney before speaking with the detective; that he intelligently and understandingly declined to exercise these rights and that the confession was given voluntarily. Furthermore, defendant took the stand at trial and admitted the crime, testifying in detail concerning the assault and the facts leading up to it, repeating on the stand essentially the same set of facts he told the detective in his taped confession. Defendant thus confirmed and established the truth of the incriminating statements in court under oath. "Involuntary confessions are rejected as evidence because they are regarded as testimonially unreliable and untrustworthy. 22 C.J.S. Criminal Law, § 817. Yet when the truth of a confession is established by the very person who made it under such solemn circumstances as on oath in open court, he may not be permitted to claim error because of the use of the confession on the ground that it was not voluntary." *State v. Ussery*, 357 Mo. 414,

208 S.W.2d 245, 246–247 (Mo.Sup.1948). In this connection see *State v. Bradford*, 462 S.W.2d 664 (Mo.Sup.1971), five cases cited on page 669, and *State v. Ryder*, 598 S.W.2d 526, 527 (Mo.App.1980).

We conclude that the state met its burden of showing the voluntariness of the confession and that the trial court did not err in admitting the taped confession in evidence.

■ Appellant's second point is that the court erred in failing to give a converse instruction.

Note on Use No. 5 under MAI–CR 19.02 provides:

"If evidence supporting 'extreme emotional disturbance' is introduced, then paragraph Second on that issue will be used. In addition the court *must* give a separate instruction directing a verdict of not guilty of *first* degree assault if that issue is found for defendant. In addition MAI–CR 19.03 explaining the standard for determining the reasonableness of the explanation or excuse *must* be given. Further, MAI–CR 19.04.1 on second degree assault *must* also be given."

The court followed the mandates of the first, third and fourth sentences in Note on Use No. 5. The court gave the State's main verdict director MAI–CR 19.02 on assault in the first degree, including therein paragraph Second which, to find defendant guilty of assault in the first degree, required the jury to find "that the defendant did not act under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, as submitted in Instruction No. 10." [1] The court gave MAI–CR 19.03.[1] The court gave MAI–CR 19.04.1 on assault in the second degree, mitigated from assault in the first degree. The court also gave MAI–CR 19.-06.1 on assault in the third degree, a Class A Misdemeanor.

---

1. Instruction No. 10: "In determining whether or not a person acted under the influence of extreme emotional disturbance for which there is a reasonable explanation or excuse, the reasonableness of the explanation or excuse must be determined from the viewpoint of an ordinary person in the defendant's situation under the circumstances as the defendant believed them to be." MAI–CR 19.03.

The court failed, however, to give a separate converse instruction directing a verdict of not guilty of assault in the first degree if the issue of extreme emotional disturbance was found for defendant, as the court was required to do by the *second* sentence of Note on Use No. 5. Appellant contends that for that reason he was denied his right to a fair trial in that the jury was not allowed to fully and fairly consider his responsibility for an assault committed under extreme emotional disturbance.

Parenthetically, the court gave separate converse instructions directing a verdict of not guilty on the charge of rape upon a finding of consent to sexual intercourse with defendant, and directing a verdict of not guilty of kidnapping if the jury did not find and believe from the evidence that defendant confined Tracey Swaggert for a substantial period without her consent for the purpose of facilitating the rape. Although there is no necessary nexus between the giving of the converse instructions and the rendition of not guilty verdicts on the kidnapping and rape charges, it is noteworthy that in the one instance in the same case in which no converse instruction was given the jury returned a verdict of guilty.

Rule 28.02(c) [formerly Rule 20.02(c)] provides that "Whenever there is an MAI–CR instruction or verdict form applicable under the law to the facts, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other on the same subject."

Rule 28.02(e) [formerly 20.02(e)] provides that "Giving or failing to give an instruction or verdict form in violation of this Rule *or any applicable Notes on Use* shall constitute error, its prejudicial effect to be judicially determined." (Our emphasis).

Unlike the situation in *State v. Bienkowski,* 624 S.W.2d 107, 109 (Mo.App.1981), there was sufficient evidence in this case to support the giving of an extreme emotional disturbance instruction, and the trial court erred in failing to give such an instruction directing a verdict of not guilty of assault in the first degree upon a finding for defendant on the issue of extreme emotional

disturbance, as required by Note on Use No. 5, supra. The ultimate question is whether the error was prejudicial. That depends upon whether the object and purpose of the mandatory-but-omitted instruction was accomplished and fulfilled under all the circumstances, in which case the omission would constitute harmless error. *State v. Minor,* 556 S.W.2d 35, 41 (Mo. banc 1977), vacated 439 U.S. 461, 99 S.Ct. 710, 58 L.Ed.2d 736 on the other grounds; *State v. Boyington,* 544 S.W.2d 300, 303 (Mo.App. 1976).

In this case defendant had no defense on the facts. He admitted an aggravated assault. He did not plead self-defense or any other justification. His only salvation was in mitigation from assault in the first degree, with its strict penalties, on the theory that he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, which if found would entitle him to be convicted of second or third degree assault with their lesser penalties. Although the issue of extreme emotional disturbance was submitted to the jury in paragraph Second of the State's main verdict director, it was not submitted to the jury a second time in a separate and independent instruction again directing the jury's attention to that issue, as mandated by Note on Use No. 5. Defendant was entitled to have the issue of mitigation called to the attention of the jury twice: once negatively in the State's main verdict director, and again in a separate and direct instruction hypothesizing defendant's side of the case, written with an affirmative cast, emphasizing defendant's theory of mitigation. Such an instruction would have tended to equalize the positions of the contending parties in the eyes of the jury. It would have benefitted defendant by lending additional dignity and importance to the issue of mitigation. By depriving defendant of that benefit he was prejudiced.

It is of no moment in this situation that defendant did not request a converse instruction. He was entitled to it under Note on Use No. 5 whether requested or not. It

is immaterial that the failure to give such an instruction was inadvertent, if so. Retrial involves waste of time, effort and costs expended in the first trial, but the second sentence of Note on Use No. 5 is a command. It is mandatory and obligatory. Judgments of conviction in cases where trial judges do not obey its direction will be upset on appeal, where the object and purpose of the omitted instruction is not otherwise fulfilled.

Reversed and remanded for a new trial.

RENDLEN, C.J., and WELLIVER, HIGGINS, GUNN, BLACKMAR and DONNELLY, JJ., concur.

BILLINGS, J., not sitting.