**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Udell THOMSON, III,
Defendant-Appellant.**

**No. 49366.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 17, 1985.

Motion for Rehearing and/or Transfer
Denied Jan. 21, 1986.

Application to Transfer Denied
March 25, 1986.

John Munson Morris, Mark Anthony Richardson, Asst. Attys. Gen., Jefferson City, for defendant-appellant.

Morris Edward Williams, Marsha Brady, Hillsboro, for plaintiff-respondent.

KAROHL, Presiding Judge.

Udell Thomson, III, defendant, was found guilty by a jury of assault first degree, § 565.050 RSMo 1978; burglary first degree, § 569.160 RSMo 1978; and armed criminal action, § 571.015 RSMo 1978, and assessed punishment at terms of eighteen, eight, and forty years, respectively. The trial court approved the judgment and ordered consecutive sentences for assault and burglary, both to run concurrent to the sentence for armed criminal action. The trial court denied defendant's motion for a new trial or in the alternative to reduce sentence.

Defendant does not challenge the sufficiency of the evidence but bases his appeal on three grounds. First, he argues the trial court erred in permitting the state, by leading questions on redirect examination, to introduce evidence of a prior consistent statement to rehabilitate a state's witness who had not been impeached. Second, defendant alleges error in the refusal of his proffered instructions on extreme emotional disturbance as a defense because there was sufficient evidence to warrant submission. Third, he contends the trial court abused its discretion in not reducing the forty year sentence assessed by the jury for the armed criminal action because the sentence was excessive in view of the eighteen year sentence assessed for assault first degree which was based on the same conduct. We affirm.

At approximately 8:00 p.m. on January 14, 1984, Ralph Sloan returned to his home. He entered and saw defendant come out of a bedroom carrying a .22 caliber sawed-off rifle which had been stored in a closet. Defendant had lived with the Sloans for three months in 1982 and 1983. When Sloan asked what defendant was doing in Sloan's home, defendant shot Mr. Sloan in the neck. Defendant bolted the rifle and fired a second shot striking Sloan in the left side. Sloan turned and ran back into the garage. He was aware that he had been shot in the left forearm. Defendant followed Sloan into the garage. When told to leave defendant responded that because Sloan had caught him in the house he had to kill Sloan. Defendant attempted to bolt the rifle and found it empty of ammunition. Sloan again pleaded with the defendant to leave but defendant repeated the statement that he had to kill Sloan because he could not go to prison. Sloan escaped from the house and managed to run next door to call for help.

Deputy Sheriff Dennis Whitby responded to the call and found defendant standing outside of the front door of Sloan's house. He arrested defendant, placed him in a patrol car, and read him his *Miranda* rights. Defendant then explained how he had burglarized the Sloan home, chased and shot Sloan, and waited for the police to arrive because "he didn't have any chance at running because Mr. Sloan could identify him."

At a preliminary hearing Whitby had testified that he entered and examined the Sloan home before this statement by defendant. At trial Whitby testified that he

entered and examined the home after the statement.

On cross-examination, by use of the transcript of the preliminary hearing, defendant attempted to establish the apparent discrepancy between the preliminary hearing testimony and the in-court testimony of Whitby. Whitby did not acknowledge the apparent discrepancy.

In order to rehabilitate Whitby on redirect examination, the prosecutor read portions of Whitby's police report and then asked Whitby whether he recalled making those statements which were consistent with the in-court testimony. Defendant's objection that the redirect questions were leading was overruled as well as objections that the questions were impermissible bolstering of the witness' credibility where the witness had refused to admit making an inconsistent statement.

■■■ We find no error on either ground. A witness' non-admission of an inconsistency is not decisive as to whether the witness stands impeached. Once a prior inconsistent statement has been introduced, thereby impeaching the witness, it is not error for the court to allow a prior consistent statement to be used for the purpose of rehabilitating the witness. *State v. Earvin,* 539 S.W.2d 615, 616 (Mo. App.1976), and cases cited therein. Second, allowance of leading questions is largely discretionary with the trial court and will not constitute reversible error unless discretion is abused. *Sheets v. Kurth,* 426 S.W.2d 103, 104 (Mo.1968). Where there is a real or apparent inconsistency in the testimony of a witness, he may be questioned on redirect examination to straighten out the inconsistency, and for this purpose he may be asked questions tending to refresh his memory, such as whether or not he made certain statements before the trial. *State v. McKinney,* 475 S.W.2d 51, 54 (Mo. 1971). Although the state may have failed to lay a proper foundation in ascertaining whether Whitby could not recall his report, the introduction of evidence received through the leading manner of the question

was inconsequential to the proof required to support the conviction. Although we do not approve the form of the questions, we find no prejudice in the allowance of leading questions under the circumstances. The scope and extent to which redirect examination of a witness shall be permitted is a matter to be left largely to the sound discretion of the trial court, reviewable only for abuse. Discretion of the trial court will not be disturbed unless it is manifest that defendant was prejudiced. *State v. Walden,* 490 S.W.2d 391, 393–394 (Mo.App.1973). Neither the testimony nor the credibility of Whitby was crucial to the state's case. The proof of commission of the charged crimes was in defendant's own trial admissions and the testimony of Sloan, and this evidence was independent of Whitby's credibility. We find no possibility of prejudice on this claim of error and deny defendant's first point.

Defendant next contends the trial court erred in refusing to give defendant's proffered instructions on extreme emotional disturbance because there was sufficient evidence to warrant submitting the issue to the jury. He says the submission of such instructions could have mitigated his conviction for assault first degree to assault second degree.

■■■ There must be a reasonable explanation or excuse for the extreme emotional disturbance, and we view the incident from the vantage of the ordinary person in defendant's situation under the circumstances as defendant believed them to be. § 565.-060.1(3)(a) RSMo 1978;[1] *State v. Bienkowski,* 624 S.W.2d 107, 109 (Mo.App.1981). "The mitigation of *extreme* emotional disturbance is available to the '*ordinary*' person caught up in events out of his control." *Id.*

■■■ Defendant testified that on the day of the incident he drank about twelve beers, took some pain pills, induced cocaine, and smoked two or three marijuana cigarettes. He admitted, however, he broke into Sloan's basement and piled several electrical items next to the rear garage

---

1. § 565.060.1(3)(a) was repealed effective July 1, 1984. The instant case was tried before the repeal; therefore, we apply the controlling law at the time.

door. He took Sloan's own gun and when asked what he was doing in Sloan's house, he said he would have to kill Sloan. He admitted chasing and shooting Sloan two or three times. Although defendant says he was under a lot of pressure working for his father and it was affecting their relationship, and he was quite concerned about his mother who had a triple bypass heart surgery, the incident for which defendant was charged was set up by defendant's "evil disposition" and there was no reasonable justification for his actions. *Id.* Defendant's acts were not a reaction to events in which he found himself but those he chose to perform. There was no medical evidence of mental disease or defect and no evidence that he was compelled by circumstances beyond his control to commit a burglary and the subsequent assault. We find insufficient evidence to warrant submission of defendant's extreme emotional disturbance instructions.

Defendant relies on *State v. Nunn,* 646 S.W.2d 55 (Mo. banc 1983) for the proposition that trial court failure to give a converse instruction directing a verdict of not guilty, if the issue of extreme emotional disturbance is found for defendant, is prejudicial error. We find our decision in *Bienkowski,* 624 S.W.2d 107 (Mo.App.1981) controlling and distinguish *Nunn.*

In *Bienkowski,* defendant was charged with assault. Instructions on the defense of intoxication and mitigation of assault because of extreme emotional disturbance were refused. On the present issue, we there considered § 565.060(3)(a) which allows a defense to the charge of assault first degree where the acts are done "under the influence of extreme emotional disturbance for which there is a reasonable explanation or excuse." Under that section, reasonableness of the explanation or excuse is determined from the viewpoint of an ordinary person in the actor's situation. We there held,

> The mitigation of extreme emotional disturbance is available to the 'ordinary' person caught up in events out of his control. *The defendant cannot hide behind reactions he himself set in motion.* The 'ordinary' is not belligerent.

This situation was set up by defendant's 'evil disposition,' and there was no reasonable justification for defendant's actions. (emphasis ours)

*Bienkowski,* 624 S.W.2d at 109. The refusal of the instruction was found proper because there was insufficient evidence to support the extreme emotional disturbance instruction.

In *Nunn* the supreme court, en banc, reversed and remanded for failure to give a separate converse instruction directing a verdict of not guilty if the issue of extreme emotional disturbance was found for defendant. The court found this instruction required by Note on Use No. 5 under MAI–CR 19.02. The facts in *Nunn* were that defendant testified he was asked to meet a girlfriend at an appointed place. While there, he heard a shot and the sound of a bullet passing him. Thereafter, when he met the girlfriend on the street, he confronted her about the incident, became angry and upset and began the assault. The court in *Nunn* recognized and distinguished the holding in *Bienkowski.* It found that defendant Nunn had admitted the assault and relied only on the element of mitigation because of the influence of extreme emotional disturbance. If found, this would entitle *Nunn* to be convicted of second or third degree assault with lesser penalties. The distinction between *Nunn* and the present case is that in *Nunn* the circumstances of the assault were not created by defendant's acts. The threat or perceived threat upon his life were the result of the actions of another. Under these circumstances, what we said in *Bienkowski* controls. The element of mitigation under § 565.060(3)(a) relates to events out of defendant's control and not events a defendant sets in motion. *Bienkowski,* 624 S.W.2d at 109.

Lastly, defendant contends his forty year sentence assessed by the jury for armed criminal action is excessive and constitutes a per se abuse of discretion on the part of the trial judge in not reducing the sentence. An extension of this argument raises the question of how a jury could suggest eighteen years for assault but forty years for the related armed criminal

action. In our review of a sentence of imprisonment we cannot judge as excessive that punishment which is within the range prescribed by statute. *State v. Repp*, 603 S.W.2d 569, 571 (Mo. banc 1980); *State v. Jackson*, 676 S.W.2d 304, 305 (Mo.App. 1984).

The range of punishment for armed criminal action is three years to life. § 571.015.1 RSMo 1978. The forty year sentence assessed by the jury is clearly within the statute. Defendant argues, however, the imposition of more than twice the number of years for armed criminal action when compared to the sentences for assault first degree and burglary first degree is clearly unreasonable and out of all proportion to the circumstances the jury found to exist when it assessed an eighteen year sentence for the assault. Although the assessment of punishment by the jury may seem unusual, under the mandate of our supreme court in *Repp*, we do not find the trial court abused its discretion in imposing sentences assessed by the jury.

The judgment of the trial court is affirmed.

SIMON and GARY M. GAERTNER, JJ., concur.