**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Cecil Wayne HARDIN,
Defendant-Appellant.**

**No. 12709.**

Missouri Court of Appeals,
Southern District,
Division Three.

Dec. 13, 1982.

Motion for Rehearing or to Transfer to
Supreme Court Denied
Dec. 28, 1982.

Application to Transfer Denied
Feb. 23, 1983.

---

**164**

felony convictions, and sentenced him to 12 years' imprisonment.

On appeal, Hardin contends that the trial court committed prejudicial error in 1) overruling his motion for judgment of acquittal filed at the close of all the evidence, 2) permitting the jury to see the alleged forged check, as it was stamped "account closed", and 3) failing to suppress an impermissibly suggestive photographic lineup.

The evidence applicable to these three points relied on is that on the morning of May 4, 1981, Flora Wirth, the former wife of Edward L. Wirth, was cleaning the top of her refrigerator. She was tossing papers and other debris that had accumulated on the refrigerator top to the floor, so that she could put them in the trash barrel. Among the papers were some blank checks for the checking account of Edward L. Wirth and Mrs. Flora Wirth at the First National Bank of Sikeston, Missouri. The checking account had been closed in 1977. The Wirths divorced in 1978.

While Flora was performing her cleaning duties, Cecil Hardin, a stepson of Edward Wirth, walked in, offered to help Flora, and picked up the papers on the floor to deposit in the trash can. Among those papers was a book of the blank checks in question. Hardin then left Mrs. Wirth's home.

Between twelve noon and 1:00 p.m. on the same day, Hardin entered Falkoff's Men's Store in Sikeston for the announced purpose of purchasing a jacket. Marie Little, a store clerk, waited on Hardin, with the assistance of Janet Dodson, another store employee. Hardin tried on several jackets, and finally selected one. Hardin and the two ladies then proceeded to the cash register to complete the transaction. At the cash register, Hardin, in the presence of Marie and Janet, gave a check in the amount of $30.34 in payment for the jacket. The check, introduced in evidence, was dated May 4, 1981, made payable to "Falkoffs", and signed "Edward L. Wirth." Hardin wrote in the date, the amount, and the signature in the presence of Marie and Janet.

John D. Ashcroft, Atty. Gen., John C. Reed, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Scott E. Walter, Public Defender, Benton, for defendant-appellant.

GREENE, Chief Judge.

A Scott County jury found the defendant, Cecil Wayne Hardin, guilty of forgery in violation of § 570.090.1(4).[1] The trial court, after a hearing, determined Hardin to be a persistent offender, due to his two prior

---

1. All references to statutes are to RSMo 1978.

At trial, Flora Wirth identified the check, which was No. 287, as one of the checks that she had thrown on the floor to place in the trash on May 4th. She also testified that the signature, "Edward L. Wirth" which was on the check, was not the handwriting of her former husband.

After Hardin paid for the jacket with the check, he left the store wearing the jacket. He had been in the store for 10–15 minutes, the lighting was good, and Marie and Janet were within touching distance of Hardin during the transaction. A short time later, a local merchant, Mr. Yanson, whose jewelry store was two doors down the street from the Falkoff store, told Mr. Friedman, the manager of Falkoff's, that a young man had just bought a watch from him and had given him a "bad check" in payment of it. Mr. Friedman then took the check in question to the First National Bank, where it presumably was stamped "acct. closed." The police were then called, and the incident was reported. The giver of the check was described to the police as a white male with long, stringy hair.

Benny Thurston, a detective with the Sikeston Public Safety Office, pulled six photographs of persons from police files who generally matched the description given to the police. All of the pictures depicted young white males with long hair. One of the photographs was of Hardin. Thurston showed the pictures to Marie and Janet. Both identified the photograph of Hardin as the person who had given them the check in question. Thurston did or said nothing to suggest to the women that Hardin was the culprit. Thurston arrested Hardin later that day. At the time of his arrest, Hardin was wearing the jacket he had obtained from the Falkoff store.

Hardin filed a pre-trial motion to suppress the photographic lineup identification testimony on the grounds that the identification was obtained by impermissibly suggestive police methods. The motion was overruled. At trial, Hardin's attorney objected to the check in question being passed to the jury because the words "acct. closed" stamped on the check constituted hearsay and was, therefore, prejudicial to Hardin.

The objection was overruled, and the check was examined by the jury. Hardin did not present any evidence at trial.

■ Hardin's first point relied on is that the evidence did not sustain the conviction. The elements of forgery under § 570.090.-1(4) are that 1) the defendant used or uttered the check in question; 2) the check was false and not issued by the purported maker; 3) defendant had knowledge of its falsity; and, 4) the defendant used or uttered the check with the intent to defraud. The testimony of Marie Little and Janet Dodson established that Hardin used or uttered a false check that was not issued by the purported maker, Edward L. Wirth.

■ As to the other two elements of the crime, knowledge of the check's falsity and uttering it with the intent to defraud, the facts and circumstances outlined above raised a rebuttable presumption that Hardin, by signing the check Edward L. Wirth, knew that the check was false, and that Hardin, by obtaining the jacket in exchange for the check, intended to defraud the clothing store. Since Hardin did not choose to explain his writing of the check, and using it to obtain the jacket, the presumption became conclusive, and supplied the two necessary elements in question. *State v. Washington,* 570 S.W.2d 838, 843 (Mo.App. 1978). The evidence was sufficient to sustain the conviction.

■ Hardin's second point is that it was prejudicial error for the trial court to permit the jury to see the check in question, because it contained the stamped notation "acct. closed." He argues that such notation was hearsay, and, as such, prejudiced him because the notation might have led the jury to believe that the check was a forgery since it was drawn on a closed account. The logic, if any, of this argument escapes us. The check in question was identified by Flora Wirth as one of the checks that Hardin had access to on the day in question. The two sales persons also identified the check as the one Hardin had written in their presence and given them in payment of the jacket. The check was clearly admissible as evidence of forgery. The notation "acct. closed" on the check

was hearsay, since there was no proof of who had put that notation on the check or why, but, if Hardin thought that such notation would have an adverse effect on the jury, he could have sought a limiting instruction from the trial court instructing the jury to disregard the notation and not consider it as evidence, or he could have requested the trial court to cover up the offending notation so that the jury could not see it. He did neither. Finally, whether the account was actually a closed account on the day in question was not an element of the crime charged. The error, if any, in permitting the jury to view the check in question which contained the account closed notation was harmless.

Hardin's final point is that the photographic lineup shown to Marie Little and Janet Dodson "gave rise to a substantial likelihood of mistaken identification and there was no independent basis for their courtroom identification."

The only thing noteworthy of this allegation is that it is devoid of any factual support. The six color photographs handed to Marie Little and Janet Dodson were of uniform size with a file cabinet in the background of each. All were of young white males with long hair. Nothing was said or done by the police officer to indicate that the photograph of Hardin was a picture of the culprit. There was nothing in the photographic display to even remotely suggest impermissible police conduct in the preparation of the photographic display or in its presentation to the witnesses. Even if there had been, the in-court identification of Hardin by witnesses Little and Dodson was reliable.

Factors to be considered in determining the reliability of in-court identification are 1) the opportunity of the witness to view the criminal at the time of the crime, 2) the degree of attention of the witness, 3) the accuracy of the witness' prior description of the criminal, 4) the level of certainty of the witness demonstrated at the confrontation, and 5) the length of time between the crime and the confrontation. *State v. Morgan,* 593 S.W.2d 256, 258–259 (Mo.App. 1980).

Marie Little waited on Hardin and assisted him in trying on several jackets. Janet Dodson assisted Hardin in making a decision on which jacket to buy. Both ladies went to the cash register with Hardin and stood by while he wrote out the check. The premises were well lighted, and Hardin was in the store between 10 and 15 minutes. The women were shown the photographic display within four or five hours of the time Hardin gave them the check. Their identification of Hardin, from his picture in the display, was definite and certain, as was their in-court identification. The trial court did not err in overruling the motion to suppress.

A complete review of the record does not indicate any errors on the part of the trial court in its rulings or actions.

The judgment is affirmed.

FLANIGAN, MAUS and PREWITT, JJ., concur.